UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JIANHAO ZHEN,

Plaintiff,

v.

CARLOS DEL TORO, Acting Secretary of the Navy,

Defendant.

CASE NO. 3:24-cv-05746-BHS

ORDER

This matter is before the Court on defendant Carlos Del Toro's motion for summary judgment. Dkt. 22.

Plaintiff Jianhao Zhen worked for the U.S. Navy for approximately seventeen months before his removal[1] in July 2023. He alleges that the Navy retaliated against him for filing an Equal Employment Opportunity ("EEO") complaint by removing him and subjecting him to nineteen other acts of discrimination and harassment. He filed two lawsuits naming the Navy's acting secretary, which the Court consolidated. Dkt. 12. In the first, Zhen, represented by counsel, asserted a single Title VII retaliation claim. *See* Dkt. 1. In the second, filed pro se, Zhen asserted general allegations of racial discrimination and retaliation. *See* Case No. 3:25-cv-05684-BHS, Dkt. 5.

[1] The Navy uses the term "removal" to refer to the termination of employment.

The Navy moves for summary judgment on Zhen's claims, arguing that it removed Zhen for seven sustained performance and conduct violations and that his protected EEO activity played no role in that decision.

Because Zhen fails to show that the Navy's stated reasons were pretext for retaliation, the Navy's motion is granted.

## I. BACKGROUND

In February 2022, Zhen transferred from a federal agency to be an Accounting Manager at the Navy's Silverdale, Washington facility, subject to a one-year supervisory probationary period. Dkt. 1 at 2; Dkt. 23-2 at 2. In May 2022, the Navy determined that Zhen was not "suitable for continued employment as a supervisor," explaining that Zhen's approach was "off-putting," employees were afraid to communicate with him, he set unrealistic and unattainable expectations, and did not take input after correction. Dkt. 23-2 at 2. The Navy reassigned Zhen to the non-supervisory position of Financial Management Analyst but maintained his GS-12 grade and pay. Dkt. 1 at 2; Dkt. 23-7 at 5. Zhen's new responsibilities included processing and certifying financial matters for assigned departments and reviewing and correcting past transactions. Dkt. 1 at 2. Herbert Thompson was Zhen's supervisor. *Id.* at 3.

One month into his new position, Zhen filed a complaint with the Navy's Equal Employment Opportunity (EEO) office, "alleging that he had been subjected to discrimination, harassment and a hostile work environment based on his race/national origin (Chinese/China), color (brown)." *Id.* The Navy notified him that the complaint was protected activity and that any retaliation for submitting the complaint was prohibited. *Id.*

In September 2022, Zhen filed a formal EEO complaint, alleging four specific incidents of harassment and discrimination: (1) a coworker publicly humiliated him by telling another employee that he was not the supervisor; (2) he was reported to security for allegedly blocking a coworker from leaving her office; (3) he was reassigned from his position; and (4) he was locked out of his office after reporting an issue to security. *Id.* at 2. Zhen told Thompson and Executive Director Edward Ingles that he filed the complaint.

In January 2023, Thompson sent Zhen a corrective email:

> [Y]ou can elect not to work overtime, but you cannot decide on your own to stay after hours and work on assigned tasks (certifying EXP, etc.) or other authorized work activities (EEO tasks) utilizing government furnished equipment without prior authorization. You, [sic] stated that you are aware that working without authorization, creates and [sic] obligation to the government. I spoke to you about this after asking you on a couple of different occasions why you were still working after your regular shift. When you requested time to work on such tasks, it was granted.

Dkt. 24-1 at 270. A few weeks later, Courtney Linden became Zhen's direct supervisor and Thompson became Zhen's second level supervisor. *Id.* Thompson discussed Zhen's EEO complaint with Linden. Linden also became aware of the EEO complaint "in late January or early February" when Zhen asked for time to work on his EEO complaint. *Id.* at 4.

Linden sought guidance from the Navy's legal team and from Zhen's EEO counselors regarding how much time she should allow Zhen to work on his EEO complaint. Merit System Protection Board ("MSPB") Hearing Transcript, Dkt. 24-1 at 48. She kept a log of all the time Zhen requested and adjusted his requested hours as necessary to ensure that he also had sufficient time to complete his work. *Id.* at 48–49.

On March 6, 2023, Linden and Thompson met with Zhen and issued a developmental counseling memorandum. Dkt. 23-4. The memo cited deficiencies in Zhen's work performance, including failing to follow proper accounting procedures, failing to follow instructions, lack of initiative in problem solving, and relying on others to complete his assigned tasks. *Id*. at 2. The memo set out a "Plan of Action" to improve Zhen's performance. *Id*. at 4. Zhen refused to sign the memo.

Zhen provides two conflicting accounts of what happened next. On the one hand, Zhen's response asserts that at the end of the meeting, he told Linden that "he planned to file an EEO complaint alleging that the imposition of the development plan was retaliatory." Dkt. 24 at 16. On the other, Zhen testified at his deposition that he did not say anything to Linden after refusing to sign the memo and went back to his workstation. Dkt. 23-9 at 8.

Later that afternoon, Linden sent an email to the Navy's human resource specialist, Linda Karrmann, and legal counsel, Mona Williams, titled, "J. Zhen – Administrative Action Required." Dkt. 23-11 at 2; No. 25-5684, Dkt. 5-1 at 24. Linden's email stated: "I need to start administrative action to remove an employee, Jianhao Zhen, from his current position." Dkt. 23-11 at 2. Linden referenced relevant "[p]erformance documentation," including that Zhen "refused to sign and acknowledge my set Plan of Action." *Id*.

On April 20, 2023, Linden issued a Notice of Proposed Removal based on a charge of unacceptable performance, supported by eight reasons: (1) poor customer service in attempting to resolve a customer payment issue, resulting in the involvement of

two managers; (2) failure to process $700,000 in refund payments; (3) failure to maintain and work on financial notification (FN) reports and communicate regarding progress; (4) failure to promptly review and forward documents to the appropriate analyst, resulting in processing delays of up to five months; (5) lack of initiative to locate instructions on SharePoint; (6) difficulty addressing a $30 vendor overpayment and failure to follow instructions for correcting it; (7) failure to follow instructions to request Defense Cash Accountability System ("DCAS") access or find archived documents; and (8) failure to execute basic accounting standards when resolving duplicate billing. Dkt. 23-5 at 2–8. She placed Zhen on administrative leave and had security escort him from the facility. Dkt. 24-1 at 245.

Zhen orally challenged the removal notice and submitted written materials to the Navy's deciding official, Deputy Quality Assurance Director Lyndee Cowan. Zhen amended his EEO complaint in February, March, and May 2023, ultimately alleging 20 incidents of harassment and discrimination between April 2022 and May 2023. Dkt. 5-3 at 2.

On July 7, 2023, Cowan found the first reason "partially unsubstantiated," but concluded that reasons two through eight were supported by the record and warranted Zhen's removal, effective that day. Dkt. 23-7 at 3. Zhen appealed to the MSPB. Dkt. 23-8. In February 2024, the MSPB held a hearing before Administrative Judge Christoph Riddle, who affirmed his removal in May 2024, concluding that the Navy "proved the charge of unacceptable performance" and that there were "no unusual circumstances" that would make Zhen's removal unreasonable. *Id.* at 5, 32.

Zhen sued in September 2024, alleging a Title VII retaliation claim. Dkt. 1. He asserts that the Navy removed him from his position in retaliation for "having reported and opposed alleged discrimination and retaliation." *Id.* at 6. He seeks reinstatement to his former position at the same pay grade, credit for time and service toward retirement, lost wages, emotional distress damages, future lost pay and benefits, and attorneys' fees and costs. *Id.* at 7.

In January 2024, the Navy's EEO Office issued a final decision on Zhen's EEO complaint, concluding that the "Navy did not discriminate against [Zhen] based on race, color, national origin or retaliation." Dkt. 24-1 at 263. It also found that Zhen "was provided reasonable official time to work on his EEO complaint." *Id.* The EEO Commission affirmed and in June 2025, Zhen's request for reconsideration was denied. *See id.*, Dkts. 5-3, 5-4.

In August 2025, Zhen filed a second complaint pro se, asserting:

> If I had not [] been a minority among the minorities in TRF Bangor, the phenomenal hostilities against me would not have been so broad from so many employees simultaneously. All discriminatory conduct against me should be considered together which all occurred in the 2 same office rooms during a period of 17 months.

No. 25-5684, Dkt. 5 at 5–6. When asked whether the second case should be consolidated with the first, Zhen responded that he did not oppose consolidation but explained that the second case concerned the "stressful work environment against [him]," from May 2022 through July 2023 whereas his first case concerned only his removal. *Id.*, Dkt. 9. The Court ordered the cases consolidated and permitted Zhen to amend his complaint in the first case. *Id.*, Dkt. 10 at 2. Zhen did not do so.

The Navy now moves for summary judgment on Zhen's retaliation claim, arguing that the numerous alleged instances of discrimination do not constitute adverse employment actions and that, in any event, the well-documented and "detailed list of [Zhen's] many performance issues . . . combined with [Zhen's] rejection of the counseling" memo provided legitimate, non-discriminatory reasons for his removal. Dkt. 22 at 17.

The Navy also moves for summary judgment on any claim that may be construed from Zhen's second complaint and his EEO complaint. It contends that to the extent Zhen asserts Title VII disparate treatment and hostile work environment claims, those claims also fail as a matter of law.

Zhen's response primarily focuses on his retaliation claim, asserting that "[t]his case is about Retaliation for EEOC participation and reporting activity." Dkt. 24 at 11. Specifically, Zhen asserts that the Navy retaliated against him for filing his EEO complaint in five ways: (1) Thompson's email regarding the use of EEO time; (2) Linden's heightened scrutiny of Zhen's work and her refusal to respond to his requests for assistance; (3) Linden's "Development Counseling" plan; (4) Linden's notice of proposed removal; and (5) Cowan's final decision to remove him. Dkt. 24 at 12–14.

Zhen also contends that although his testimony does not support a claim for racial harassment, the five adverse actions "clear the bar as a hostile work environment claim." *Id.* at 22. He argues that "there is a clear pattern of harassment that is obviously based on animus towards [him] for his EEO activity." *Id.* at 23.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, courts must view the evidence "in the light most favorable to the non-moving party." *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (internal citation omitted).

In an employment discrimination case, the plaintiff "need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000). This is because "'the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.'" *Id.* (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). But even in employment discrimination cases, summary judgment must be granted when there is a "complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party may not rely on the mere allegations in the pleadings to show a "genuine issue for trial," but must instead "set forth specific facts[.]" *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (quoting *Anderson*, 477 U.S. at 256). Summary judgment should be granted

"where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

**B. Zhen's retaliation claim fails as a matter of law.**

As an initial matter, the parties dispute what standard the Court should apply to resolve Zhen's retaliation claim. Zhen suggests that the Court follow a concurrence from the Fourth Circuit Court of Appeals which "urge[s] the Supreme Court to clarify or overturn *McDonnell Douglas*." *Id*. at 10-11 (citing *Hollis v. Morgan State Univ*., 153 F.4th 369, 388 (4th Cir. 2025) (Quattlebaum, J., concurring)). He asserts that "where there is evidence supporting the elements of the claim, the case should proceed to trial." Dkt. 24 at 11.

Although the Court agrees with Judge Quattlebaum that *McDonnell Douglas* is, at times, "unnecessarily complex," the Court is bound by Ninth Circuit precedent, which is clear: "Title VII retaliation claims use the same burden-shifting *McDonnell Douglas* framework used for discrimination claims." *Lui v. DeJoy*, 129 F.4th 770, 781 (9th Cir. 2025).

Applying that framework, Zhen must show that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. *Lui v. DeJoy*, 129 F.4th 770, 782 (9th Cir. 2025). Once a prima facie case is established, the burden shifts to the defendant to articulate "a legitimate, non-retaliatory reason" for the challenged action. If it meets that burden, the

plaintiff then bears the burden of showing "that the stated reasons were a pretext for retaliation." *Id*. (quoting Surrell, 518 F.3d at 1108).

An "adverse employment action" is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in a protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (citing EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)). Courts interpret adverse employment actions broadly. *Id*. It need not be a material change in the terms or conditions of employment. *Campbell v. Hawaii Dep't of Educ*., 892 F.3d 1005, 1021 (9th Cir. 2018). Instead, an alleged retaliatory action "is subject to challenge so long as the plaintiff can show that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Adverse employment actions may include "lateral transfers, unfavorable job references, and changes in work schedules." *Ray*, 217 F.3d at 1244.

To establish a causal link, Plaintiff must show that his protected activity was a "but-for" cause of adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* "[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton County, Georgia*, 590 U.S. 644, 656 (2020).

The Navy contends that Zhen fails to allege sufficient facts to establish a prima facie retaliation claim. Although there is no dispute that Zhen engaged in protected activity by filing his EEO complaint, the Navy argues that three of the five alleged retaliatory acts do not constitute an actionable adverse action, and that Zhen cannot establish that his EEO protected activity was the but-for cause of his removal or any of the Navy's alleged adverse actions against him. The Court considers each alleged retaliatory act in turn.

**1. Thompson's January 13, 2023, email regarding use of EEO time**

Zhen contends that Thompson's email qualifies as a "warning" regarding Zhen's use of work time for his EEO complaint. Dkt. 24 at 12. He argues that Thompson's decision to print the email and provide it to Linden when she first became Zhen's supervisor demonstrates that it was intended to be acted upon and, in fact, resulted in heightened scrutiny by Linden.

The Navy responds that Zhen mischaracterizes the email, which merely reinforced standard policies governing work schedules and overtime and was unrelated to any protected activity. Dkt. 25 at 5.

Even viewing Thompson's email in the light most favorable to Zhen, it does not qualify as an adverse employment action. The email corrected Zhen's practice of working overtime hours without authorization. *See* Dkt. 24-1 at 270 ("[Y]ou can elect not to work overtime, but you cannot decide on your own to stay after hours and work on assigned tasks (certifying EXP, etc.) or other authorized work activities (EEO tasks) utilizing government furnished equipment without prior authorization."). Zhen does not dispute

that he engaged in this practice, nor does he contend that the email misstated the applicable overtime policy or that it was unevenly applied. Thompson's email explained that Zhen could not unilaterally remain after hours to perform assigned work or other authorized activities, including EEO-related tasks. *See* Dkt. 24-1 at 270. An email accurately explaining that workplace policy, without more, does not constitute an adverse employment action. A reasonable worker would not be dissuaded from filing an EEO complaint by the prospect of receiving such an email. *See Burlington*, 548 U.S. at 68.

Zhen fails to establish a prima facie retaliation claim based on Thompson's email.

**2. Linden's heightened scrutiny of Zhen's work and her refusal to respond to his requests for assistance.**

Zhen's summary judgment response contends for the first time that Linden's refusal to assist him when he needed or requested help constituted the "withdrawal of a positive employment action" and, therefore, qualifies as an adverse employment action. Dkt. 24 at 13.

The Navy responds that Zhen did not identify this alleged conduct in his complaint or in response to written discovery asking him to identify each instance in which he claims the Navy retaliated against him. The Navy further argues that Zhen offers no evidence that Linden acted with retaliatory motive or that any failure to provide him with assistance or training was related to his EEO activity.

The Court agrees. Zhen cannot avoid summary judgment by relying on new allegations that were not pleaded in the complaint. But even viewed in the light most favorable to Zhen, the evidence does not support an inference of retaliatory motive. *See*

*Ray*, 217 at 1244 ("An adverse employment action must be based on a retaliatory motive and must be reasonably likely to deter the charging party or others from engaging in a protected activity."). To show that Linden's refusal to train him was retaliatory, Zhen relies on an email from HR specialist Karrmann to Cowan, sent before the removal decision, identifying information Cowan might consider in her *McDonnell Douglas* factor review analysis. Karrmann noted that Zhen "repeatedly asked for training and was sometimes told no by [Linden]," and "[w]hen asking questions, [Linden] stated she was not going to answer his question(s) 'again.'" Dkt. 24-1 at 289.

This email does not support an inference of retaliation. At most, it shows that Linden provided Zhen with some training but declined to provide additional assistance on other occasions. Cowan's removal decision describes what training the Navy provided:

> You received training from coworkers that included visual aids on how to perform tasks assigned to you, you had ample training opportunities to proactively improve your performance on Thursday's of each week per the Outlook invite from the Comptroller on 18 August 2022, you were corrected in your performance by peers, and you were counseled by your supervisors and provided feedback and guidance for acceptable performance several times during your time of employment[.]

Dkt. 23-7 at 5. Zhen fails to identify any specific training to which he was entitled but was denied. Zhen was a GS-12 employee, the same grade as Linden, his supervisor. The fact that Linden did not always help Zhen does not, without more, suggest retaliation.

Zhen fails to establish a prima facie retaliation claim based on Linden's alleged refusal to help Zhen do his job.

**3. Linden's "Developmental Counseling" plan**

Zhen asserts that "several of the performance errors" cited in Linden's developmental counseling plan "were incorrect or just false." Dkt. 24 at 13. Zhen asserts that the memo is like an "investigation" and that it "carries with it the specter of negative action against an employee who does not improve." *Id.*

The Navy contends the plan was not an adverse action, but rather an effort to "attempt at training and correcting deficiencies." Dkt. 25 at 6. It argues that an "attempt to help a struggling employee do better at his job is not adverse." *Id.* at 7.

The Court agrees. The stated purpose of Linden's counseling plan was "[p]erformance improvement and professional development." Dkt. 23-4 at 2. Consistent with that purpose, the plan summarized the identified performance issues and outlined a plan of action for addressing them. A reasonable worker would not be dissuaded from engaging in protected activity for fear of receiving this type of performance-related guidance especially where the worker does not dispute that he made the mistakes identified in the plan.

Zhen fails to establish a prima facie retaliation claim based on Linden's developmental counseling plan.

**4. Linden's Notice of Proposed Removal and Cowan's Final Removal Decision.**

The parties agree that Linden's notice of proposed removal and Cowan's final removal decision are adverse employment actions. The Navy contends, however, that

Zhen fails to provide evidence that his EEO protected activity was the but-for cause of his removal.

Causation may be inferred from "the proximity in time between the protected action and the allegedly retaliatory discharge." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986). However, as the Navy points out, "temporal proximity cuts both ways." Dkt. 22 at 18 (quoting *Curley v. City of North Las Vegas*, 772 F.3d 629, 634 (9th Cir. 2014). When "an adverse action follows on the heels of both a protected activity and an independent reason for adverse action—[temporal proximity] might not be enough standing alone to establish pretext." *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024).

Zhen contends that the temporal proximity (a few short hours) between his telling Linden that he intended to file an EEO complaint alleging that the developmental plan was retaliatory and Linden's email seeking guidance on removing an employee, supports an inference that his protected activity caused Linden to propose his removal.

The Navy responds that it is uncontested that Linden was generally aware that Zhen was engaging in EEO activities but that there is no evidence that Linden started the removal process because of his EEO activities. Dkt. 25 at 7. It emphasizes that the counseling memo made no reference to Zhen's EEO activities and that its purpose was to improve Zhen's admittedly deficient performance. *Id.*

Zhen's own account is inconsistent as to whether he actually told Linden that he intended to file an EEO complaint. Although he argues in his response brief that he told Linden that "he planned to file an EEO complaint alleging that the imposition of the

development plan was retaliatory," Dkt. 24 at 16, in his deposition, he testified that he did not say anything to Linden after refusing to sign the memo and went back to his workstation. Dkt. 23-9 at 8. But even assuming he did, neither Linden nor Thompson learned anything new about Zhen's protected activity at that meeting. Both had known about Zhen's EEO activity for months. More significant was Zhen's refusal during the meeting to sign Linden's counseling memo and action plan. The Navy asserts that this refusal itself provided an independent basis for disciplinary action.

Because Zhen's refusal to sign occurred contemporaneously with his alleged statement that he intended to pursue further EEO activity, the close timing between that statement and Linden's decision to seek guidance about disciplinary action is not probative of retaliatory motive. The timing is equally, and more directly, explained by Zhen's refusal to sign the counseling memo. Zhen identifies no evidence undermining the reasons for his proposed removal, or provide evidence that Linden or Thompson failed to provide him with reasonable time to work on his EEO complaint. Without that, his case fails.

Even viewing the evidence in the light most favorable to Zhen, no reasonable juror could find that Zhen's protected EEO activity was the but-for cause of his removal. Zhen fails to establish a prima facie case of retaliation.

**C. Zhen fails to show that the Navy's non-discriminatory reasons for his removal were pretextual.**

Even assuming that Zhen can establish a prima facie case of retaliation, his claim still fails because he does meet his burden to show that the Navy's reasons for his

removal were pretextual. The focus of a pretext inquiry is "whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (citations omitted).

Linden's notice of proposed removal identified eight reasons supporting her recommendation to remove Zhen. Dkt. 23-5 at 2–8. Cowan found the first reason "partially unsubstantiated," but sustained reasons two through eight, concluding that they warranted Zhen's removal. She explained,

> You failed to provide contradictory evidence to most of the reasons identified. . . . The sustained inconsistent performance of duties assigned to you negatively impacted your work team and had a significant financial impact to the Command. Specifically, your failure to acceptably perform duties assigned to you resulted in approximately $700,000 of unnecessarily unavailable funds available to the Command which negatively affected its budgets and purchasing ability. Additionally, your unacceptable performance resulted in 3 coworkers being reassigned from their normal duties to process delinquent work assigned to you. . . . You performed questionable accounting practices, including providing inappropriate accounting suggestions to vendors requiring intervention by your supervisor.
>
> * * *
>
> My review of the materials relied upon reveals that you were unable to perform lower-graded tasks at a minimally acceptable level over a significant period of time which negatively impacts my confidence in your ability to perform tasks expected of a GS-12 grade level. Due to the volume of incomplete assignments, your supervisor had to reassign your work to others. Furthermore, when you felt you did not get enough help or training on a function of your job, you ignored the assignment and acted like you were not aware. Additionally, you provided poor accounting advice to a vendor, which your supervisor had to intervene to correct.
>
> * * *
>
> Per the materials relied upon and information provided by you during your oral response of 24 May 2023, you received notification of work assigned to you via email from the work lead, you received training from coworkers that

> included visual aids on how to perform tasks assigned to you, you had ample training opportunities to proactively improve your performance on Thursday's of each week per the Outlook invite from the Comptroller on 18 August 2022, you were corrected in your performance by peers, and you were counseled by your supervisors and provided feedback and guidance for acceptable performance several times during your time of employment at Trident Refit Facility Bangor. Therefore, you knew or reasonably should have known your performance was unacceptable.

Dkt. 23-7 at 4–5.

Zhen argues that these reasons are all pretextual. He again relies on Karrmann's HR email, which noted that one of Zhen's mistakes was also made by other employees, that Zhen relied on a Navy regulation to support his $30 write-off, and that Linden admitted to withholding some support and training from Zhen. Dkt. 24-1 at 289–90. Zhen argues that his case is akin to *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133 (2000), where the Supreme Court concluded that plaintiff's prima facie case, "combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, can sustain a finding of liability for intentional discrimination." Dkt. 24 at 18 (citing *Reeves*, 530 U.S. at 141.). But in *Reeves*, the plaintiff presented substantial evidence that the employer's stated reason for firing him—shoddy recordkeeping—was *false*. *Reeves*, 530 U.S. at 143. In that case, the plaintiff offered evidence that he had properly maintained the attendance records in question and cast doubt on whether he was responsible for any failure to discipline late and absent employees. *Id.* at 144.

Here, unlike the plaintiff in *Reeves*, Zhen does not contest that the incidents upon which Cowan sustained his removal occurred, including, among other things, that he had

not timely processed $700,000 in refund payments, failed to work on his FN reports, and delayed documents assigned to other employees. Instead, Zhen largely offers explanations or excuses for his performance deficiencies. He points to evidence that other employees made similar mistakes, asserts that he lacked adequate training, or that he "lack[ed] experience." Dkt. 24 at 19. But his coworkers were able to complete the same tasks, and Zhen identifies no evidence that they received more or better training than he did. Rather, Zhen acknowledged that as a GS-12, Financial Management Analyst, "management should be able to rely on [him] as a subject matter expert." Dkt. 23-7 at 4. Zhen's supervisors, Administrative Judge Riddle, and the EEO Commission all reached the same conclusion: Zhen failed to meet the performance expectations of his position. *See* Dkts. 23-5, 23-7, 23-8; No. 3:25-cv-05684-BHS, Dkts. 5-1, 5-3, 5-4. Zhen offers no evidence that meaningfully challenges the Navy's stated reasons for his removal.

The Court is also not persuaded by Zhen's "cat's paw" theory of liability. Dkt. 24 at 20. Zhen asserts that "[a]s a matter of law, [Linden's] animus is 'imputed to Cowan.'" *Id.* at 20. He argues that Thompson "started the ball rolling" by sharing the email addressing Zhen's use of overtime with Linden. *Id.* at 21–22. He asserts that Linden then "transferred that animus into withholding support from him and presenting him with a baseless development plan." *Id.* Zhen asserts that after he told Linden that he would report her to EOO, "she started the ball rolling towards his termination" *Id.* at 22.

Under the "cat's paw" theory of liability, a subordinate's bias may be imputed to the ultimate decisionmaker when the subordinate's discriminatory conduct influences the adverse employment decision such that the decision was not truly independent. *See Lui*,

129 F.4th at 779 (citing *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007)). Here, there is no evidence that Linden fabricated the performance deficiencies underlying her recommendation, manipulated the evidence presented to Cowan, or otherwise caused Cowan to sustain Zhen's removal because of Linden's discriminatory animus. There is also no evidence that Thompson's email reinforcing the Navy's overtime policies was motivated by discriminatory animus or was otherwise not warranted. Without evidence connecting discriminatory animus to the events leading to Cowan's decision, Zhen cannot establish liability merely by showing that Linden participated in the process.

Zhen fails to meet his burden of showing that the Navy's stated reasons for his removal were pretext for retaliation based on his protected EEO activity. Ultimately, the Navy was unwilling to retain an employee who repeatedly failed to meet performance expectations despite receiving training, counseling, and opportunities to improve. Zhen may believe that the Navy should have provided more training rather than remove him, but that disagreement does not suggest that the Navy's stated reasons for his removal were pretextual. *See Stewart*, 207 F.3d at 378 (explaining that courts do not sit "as a superpersonnel department" to second-guess an employer's business decision).

The Navy's motion for summary judgment on Zhen's retaliation claim is **GRANTED**.

### D. Zhen's disparate treatment and hostile work environment claims fail as a matter of law.

Zhen's complaints do not expressly assert hostile work environment or disparate treatment claims. But to the extent those claims can be construed from his second pro se

complaint, the Navy moves for summary judgment on both. Zhen did not respond to the Navy's arguments regarding his disparate treatment claim, and nothing in the record suggests that he was treated differently from similarly situated employees. *See Freyd v. Univ. of Or.*, 990 F.3d 1211, 1228 (9th Cir. 2021) (A plaintiff must show, among other things, that "similarly situated individuals outside of [his or her] protected class were treated more favorably."). The Navy's motion as to that claim is **GRANTED**.

Zhen recognizes that his complaint alleges "a hostile work environment based on Race and Retaliation." Dkt. 24 at 22. He now concedes, however, that his testimony does not support a claim of racial harassment. *Id.* Instead, he argues that the five adverse actions amounted to a "campaign of mistreatment" that began with Thompson's email and continued through Linden's heightened scrutiny and comments about his use of EEO time. *Id.* He contends that, taken together, these actions constitute retaliatory harassment, sufficiently severe or pervasive to create a hostile work environment. *Id.* at 23.

The Navy treats these allegations as a stand-alone hostile work environment claim. But a hostile work environment may also support a retaliation claim if the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ray*, 217 F.3d at 1245. Whether considered under either framework, Zhen's claim fails.

To determine whether conduct was sufficiently severe or pervasive to violate Title VII, courts look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Zhen's allegations do not bear any of these characteristics. The alleged conduct was neither frequent nor severe. Thompson's email describing the Navy's overtime policies was not physically threatening, humiliating, or offensive. Nor was Linden's development plan, which was intended to improve Zhen's admittedly deficient performance. And Zhen identifies no evidence that any of the alleged conduct unreasonably interfered with his work performance.

The Navy's motion for summary judgment on Zhen's disparate treatment and hostile work environment claims is **GRANTED**.

## III. ORDER

Zhen offers no evidence to suggest that the Navy's legitimate, non-discriminatory reasons for his removal were pretext for retaliation. The Navy's motion for summary judgment, Dkt. 22, is **GRANTED**. This case is **DISMISSED** with prejudice.

The Clerk shall enter a JUDGMENT and close the case.

IT IS SO ORDERED.

Dated this 9th day of October, 2026.

BENJAMIN H. SETTLE
United States District Judge